181968 Zurich American Insurance Company v. Electricity Maine, LLC et al. Thank you. Thank you. Thank you. Good morning, and may it please the Court. My name's John Whitman. I represent the appellant Zurich American. I apologize for my hoarseness. I'm getting over something. I would like to reserve two minutes for rebuttal. Certainly. This case, by way of background, in 2011 in Maine, a brand new company, Electricity Maine, sprang up and made a pitch for residential and small business electricity customers throughout the state. This is not a utility. The law in Maine allowed non-utilities to bid for this market, and they did so with great success. And they did so by stating at the outset that if you come with us, you will never have to pay the so-called standard offer, which is what the regulated utilities can charge as set by the PUC. That was seven or eight years ago now. Within no time flat, because of the advertising campaign they put on, they had garnered 20% of the residential and small business market in Maine, an extraordinary rise. And to flash forward, some years later, a class action was brought by, or on behalf of approximately 200,000 such customers, stating that they had been defrauded over a period of years by various practices, all of which are set forth in the underlying complaint, which is, of course, part of the appendix and also an addendum. So the question here, electricity in Maine had a standard commercial general liability insurance policy with Zurich, several in a row, but they had the same provisions. And the question is, does Zurich have a duty to defend them in this case? The court below said yes, but I submit that the answer is no. And I think the two questions to focus on, because these are the two elements, have to do with what the insurance agreement says. All CGL policies say that there are two prerequisites. Number one, there has to be an accident. It's called an occurrence, but defined as an accident with its regular meaning. It's not separately defined. Number two, there has to be damage caused by that accident, which falls into one of three categories. Only one of those categories is before us today. The other two are by agreement, essentially not in the case. And that would be bodily injury. Now, the class action complaint does not allege bodily injury, but there is a line of cases in Maine which say that if you allege emotional distress, that gives rise to a possibility that there might be bodily injury eventually caused by that emotional distress, and therefore a duty to defend. In this case, there is not even an allegation of emotional distress. However, in two other cases of more recent damage, the court has said, the law court, that if there could be an inference of emotional distress, and if emotional distress falls within the ambit of recoverable damages under any count in the complaint, then the insurer has to defend. So that's what we have here. We have an inference, or a possibility, if you will, that the allegedly defrauded customers of Electricity Maine, and just to give you the scope, 200,000 customers, an alleged $35 million in monies fraudulently stolen from them, works out to a little under $200 a piece. But the conceivable possibility is that this loss of a little under $200 over a period of years could give rise to emotional distress, this at any rate is the argument of Electricity Maine, which in turn could suggest the possibility of bodily injury, and therefore lead to the duty to defend. Okay, so you've given a fine recitation of what I thought Maine law was, now what's wrong with it? Well, this is an unusual case, and there are two things that are disparate that I want to address, and obviously are covered very thoroughly in the briefs. Number one, we say that there is no way you can read this complaint to suggest that the behavior of Electricity Maine, or the damages allegedly suffered by its customers, was in any way an accident. To the contrary, the only conclusion you can draw from reading the complaint, notwithstanding the fact that they've thrown in a negligence count, the only reasonable thing you can conclude is this is a well-planned scheme that was put into operation over a period of years. But how do you deal with the negligence count? It's there. I think the negligence count, basically... You can't make mistakes. Let me come at it a different way. You can make misrepresentations negligently. I don't understand. Obviously, it's a major point for you, but I'm not quite sure what your answer to it is. All right. There are two counts in the complaint that have the word negligence in them. One is negligence, and one is negligent misrepresentation. As I've said in the brief, the two of them are really one. They're negligent misrepresentation. There's no other way that Electricity Maine could be negligent but their representations. What I'm arguing is that although it is true that there is a count called negligence, negligent misrepresentation, given the enormous detail and length of the allegations, it is impossible to come up with a conclusion that this was anything but deliberate. Now, this requires, obviously, a... It depends on what the facts are going to show at the trial. I'm not sure I understand what the argument is. How is it impossible that suddenly in the middle of the trial, it looks like it's easier to prove that it was misrepresentation, but it could have been careless? Well, that's, of course, the approach that someone would take trying to... Yes, but the question is what's wrong with it. I think what's wrong with that, if I may, is that in this case, suppose that your possibility is contemplated. If the people who started Electricity Maine were well-intentioned and simply wanted to have a going business and help people obtain cheaper electricity, but then had discovered that, in fact, it's rarely possible, and only briefly, to beat the standard offer, they would have, after a year or so, been out of business. They would have, you know, basically said we were wrong. They have continued for seven years pumping the same message. If you are paying the standard offer, you're a dummy. You're a chump. And so I think that, and this is... Wait a second. What you're making... I'm sorry. You're saying there's sort of an artful pleading exception to the way Maine law normally operates, so that... It is an exception. If you just keep characterizing something in terms that would fit within Maine law, the trigger that you defend isn't enough. We have to look behind it and decide whether that's a plausible way of characterizing the claim at all? Yes, that's exactly what I'm saying. And what's your authority for that? Well, the court has done it very rarely, to be sure. There's a case called Baywood, which is not on the issue of accident versus negligence, where the complaint, which had nothing to do with property damage, it's mentioned in the brief, but basically the complaint dropped in the word property damage, which is a term of art, one of the three categories of damage that's covered by a CGL policy. And the court below said, well, the complaint says property damage, therefore there's a duty to defend. In fact, there was no property damage. In that case, the condo developer had represented that he would produce a sewer system that would meet the town recommendations. The town said, no, it doesn't meet those recommendations. There was no property damage at all, no physical injury. Simply, the condo developer had to go back and spend more money and put in a proper system. The thing that's odd there is there you're pleading something that's worse. The plaintiff is saying something bad happened, and then you say it's not true. Here, what you're asking us to do is say the plaintiff is saying something less bad happened. It's only negligence. It wasn't intentional. And you're saying, well, no, they're not allowed to say that because we think the evidence shows that the only conduct was really bad. That's just odd because negligence is almost like lesser included or something. I think that's just an odd circumstance of you making the argument you are, which is that we could look behind it. It's an unusual argument for an unusual case. Most of the duty to defend law in Maine over the past 40 years, and I've seen it develop as it was and as is typical from cases that are nothing like this, the cases of assault, let's say, where it's unclear whether somebody actually meant to hit somebody or whether it was just a fracas that got out of control and everybody was negligent, that sort of thing. This is so different, and the court recently has looked, the law court has looked with renewed attention for the first time in a couple of decades at the requirement of an accident. What about the straight negligence claim that's not characterized as negligent misrepresentation? And suppose that was the notices were going to the wrong place. That was just careless. The negligent misrepresentation, first of all... Not the misrepresentation. I take your point about misrepresentation, but... Count four, which is just negligence, if you read it, and this is spelled out in both the main and the reply briefs, it is nothing more than a negligent misrepresentation claim. They've taken it and cut it in half. There are only about four paragraphs in each of these counts after 30 pages of fraud. Weren't there allegations about the notice going to the wrong place in that count or not? I'm sorry, Your Honor? I thought there were some allegations of the notice going to the wrong place, going into, like, spam accounts or people not getting the notifications. Is that wrong? Oh, electricity main? Yeah. Well, that was all part of the scheme. They said that conduct wouldn't necessarily have to be intentional. No, but the overall scheme... But couldn't that ground a negligence claim standing alone? Wouldn't that be enough to trigger the duty to defend? But if you look at the actual negligence count, which is count four, it has nothing to do with that. Instead, it's basically as if they took one count with six paragraphs, cut it in half. They're all about negligent misrepresentation. I've set them out together in the reply brief so you can quickly see that. So what we're really talking about is a single count for negligent misrepresentation. And that single count, there is simply no way that for seven years they went on negligently misrepresenting their ability to beat the standard offer. It strikes me that what makes this case uncomfortable, to decide that there is a duty to defend, is that it rests on things we know are in many ways unrealistic, that a case that's really a false representation case is suddenly going to turn into a negligence case. It does turn out, it looks, however, for Maine law as if for policy reasons, they're willing to make very unrealistic assumptions about how a case will turn out. They have some explanations as to why they have that rule. They're policy reasons. You know, we all like having double trials and so forth. But in a way, you have a situation in which the assumptions they're making about the duty to defend seem highly unrealistic and in which Maine is prepared to endorse highly unrealistic assumptions for policy reasons. It's a hard problem. I think that in the last two years, 2017 and 2018, with the emphasis in three cases that I've cited on a renewed interest in focusing on accident, those cases, I don't want to take too much time on this because I want to move on to my second point, but I think those cases show that the law court is realizing that they have gone too far. It's time to move on to your second point. You have one minute to make it. Thank you. Totally different point, and Zurich need not make both of these points. If there's no duty to defend because there is no damage that is implicated by the allegations in the complaint, that's the second point, and that is clearly the case. There are four cases that the court needs to look at. Two of them were the ones, Douglas Dynamics and Vigna, where there was an allegation of emotional distress, and the court there said, well, in those cases, if there is an allegation of emotional distress, one case was wrongful discharge, the other was supposedly a breach of promissory estoppel, the court didn't trouble to say, well, we'll look at whether they could have recovered. We'll just say that you have to defend those. But ours is a different case, and it falls under the latter two cases, Lambert and Harler, and in both of those, the court said, and the district court actually said this in the order, that you cannot have, in a case where there is no allegation of emotional distress in the case, you cannot have a duty to defend unless at least one of the counts is a cause of action which could give rise to the recovery of emotional distress. You can't just say nothing about emotional distress, put in causes of action that don't allow you to get emotional distress and expect to be defended. And I've gone through in the brief all eight of the counts in the complaint and shown that in not one of them is it possible to get emotional distress damages. I'm sorry, is that dependent on us treating the, right here, is that dependent on the negligence claim being different from a negligent, being no different than a negligent misrepresentation claim? Yes, it is. Okay. And I think that's the case if you take a look at it. Thank you. Thank you. Good morning. May it please the Court. My name is Tim Spagelman. I represent the Class Action Defendants in the appeal. This case is about an insurance company's duty to defend under Maine law and whether a complaint sounding in negligence and out of the Unfair Trade Practices Act gives rise to a duty to defend. When Zurich Insurance Company took premiums from the insured, for however many years the policy was in place, it agreed to the insurance contract. And now that there's a lawsuit that's been brought against these insured, Zurich stands here today saying they want to read the complaint in such a way to read out essentially the negligence claim and the Unfair Trade Practices Act claim. In fact, the duty to defend in Maine, as the panel's already discussed this morning, the duty to defend in Maine is broad. And there need not be a showing that the plaintiffs will win. At the pleading stage right now, all that's required is there is a possibility that there could be covered damages recovered at the end of the lawsuit. Maine employs a pleadings comparison test comparing the complaint to the underlying insurance policy. And as the law court has recently discussed, the pleadings comparison test transcends the specific allegations in the complaint. And the Zurich Council recently talked about the Harler decision, and the Harler decision, in our view, controls. In fact, Harler didn't have allegations of emotional distress. They weren't alleged at all, and yet the possibility of showing emotional distress was sufficient to give rise to covered damages. And the whole purpose, the policy reason for this... Is that because the claim pled was one for which you could recover damages for emotional distress? Yes, Your Honor, that's correct. So does that rule out you relying on any of your negligent misrepresentation claims? Your Honor, our brief focuses on the negligence count, count four, and the unfair trade practices that claim, count three. So that's a yes? Yes, Your Honor, although within the asterisk... So then that separately then depends on the negligence claim not being identical in its actual allegations to the negligent misrepresentation claim, right? That's correct, Your Honor. So what about the negligence claim in the way it's claimed? Is something other than a negligent misrepresentation claim? Yes, Your Honor. The complaint paragraphs 30 through 32 talk about notices going to the wrong place, going to spam filters or going email rather than written letters. Complaint paragraph 111 repeats and re-alleges everything above into the negligence claim, count four. Those notices going out to the wrong or allegedly wrong email address has nothing to do with the substance of the notice. It's got nothing to do with any sort of representation or misrepresentation. That's simply a fact of where did it go and what was the channel they used to communicate. That may or may not be a negligent act. We'll figure that out at trial someday, but today in a duty-to-defend context, that possibility of negligence unmoored from any misrepresentation, the substance of the communication, is negligence itself. So count four is sufficiently played because of those notices under paragraph 30 through 32. What Zurich just told this court all about are these allegedly bad facts, these allegations of all kinds of bad stuff. And Zurich would have this court do exactly what Maine law has declined to do time and again, which is have a mini-trial on the duty to cover, the duty to indemnify, at the duty-to-defend stage. The whole purpose is to discourage mini-trials on the duty to defend and a couple times it's come up in the case law, it's been described as the true facts. And Baird Pavin talks about this. There is no true facts defense that an insurance company can come in and say, well, you know, the true facts that we'll approve the trial someday are such that we're never going to have to pay a dime on this. The insurance company simply cannot come into a duty-to-defend case and say, the true facts eventually leave it all to pay so we don't have to defend. In fact, opining on these sorts of issues in the recent Arler decision, Maine law court discussed the exact opposite, that when there is a potential, however remote and however unlikely of cover damages, that perhaps, and this is Justice Alexander in his concurrence in Arler, that the right thing for the insurance company to do is to come in, defend, and if there are grounds to dismiss out those cover claims, then dismiss them out or if somebody judges them, just get rid of those cover claims. And that would satisfy the obligation of the insurance company to provide a defense because then the cover claims are gone. That's not what Zurich is doing here today. Instead, Zurich is asking this court to relieve it of its contractual obligation to provide defense. So what would happen in the case of what you just described as Justice Alexander's concurrence that new counsel then comes in? Well, Your Honor, if the insurance company's duty were limited only to certainly cover claims, then on the front end, prospectively, that insurance counsel would, in accordance with the rules of professional conduct, have to have informed consent. We're only here for claim two and claim three, whatever they are. I thought that's what you were just suggesting is the way it would work. So I'm just testing that. Is that how it would work? Well, Your Honor, that's Justice Alexander's suggestion in the concurrence. It's not fleshed out more than that. Again, it's a concurrence, but that's the guidance that we have from the main law court right now. If I can turn to the covered harm question, on page 174 of the appendix is probably the best place, the easiest place to find the definition of bodily injury. And bodily injury is just two sentences long, and if I may, I'm just going to read it right out for the court. Bodily injury means bodily injury, sickness, or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, or death resulting from bodily injury, sickness, or disease. Now, what the court will have seen in a briefing is the insurance company's contention that it is unambiguous, and an insurance company's view that there's only one way to read that, which is the dependent clause at the end, resulting from bodily injury, sickness, or disease, that dependent clause necessarily modifies the four terms in that second sentence that come in front of it. In fact, that's not the only way to read it. It's not even the best way to read it. The best way to read it, when there's a modifying clause at the end of the series, the best way to read that is that the modifying clause only modifies the last term in the series. In fact, the U.S. Supreme Court said as much in the 2016 decision Lockhart v. United States, a criminal case where there were a series of three types of criminal conduct, and the last in the series was modified by, and I've got it here, the last in the series of criminal statutes was conduct involving a minor or ward, and the defendant on appeal argued that conduct involving a minor or ward must necessarily modify the earlier two terms in the series, aggravated sexual abuse or sexual abuse. And the defendant there was convicted of sexual abuse, but it did not involve a minor or ward. The U.S. Supreme Court said, no, it is enough that you're convicted of sexual abuse, and the fact that the third term is the only one modified means that the mandatory minimum applies, even though the term did not modify that second term. And to the extent that Zurich wants to come here today and talk about this... Even if you were wrong on that, even if you were wrong on that point, what do you make of the fact that the second sentence just says, this includes? Yes, Your Honor, even if the sort of grammatical construction there is, even if the court disagreed with that, this includes is clearly language of inclusion, arguably language of expansion. This includes, and we say as much in the brief, this is inclusive language. Boundary injury, this includes. It doesn't go on to say, however, accepting X, Y, Z. It doesn't have any terms excluded from that. And, in fact, in this insurance analysis, proving an exclusion falls back onto the insurer once the coverage has been proven. So there is no such thing. Is there any degree of improbability, practical improbability, that can lead a court to say, well, this is so improbable real life that it's never going to produce the covered outcome? Under Maine law. Under Maine law, is the answer that anything you can imagine is good enough? Your Honor, I believe the answer is Maine law has not put such a limitation. In fact, in Justice Alexander's same concurrence in Harler, Justice Alexander discusses how it's unlikely or goes on to say something like, in fact, there's no chance at all that this covered harm, emotional damages, will be recovered. Is the phrase no chance at all present? That's all right. We can look it up. I think that's out of the Harler concurrence. Yes, Your Honor. And so, again, that's a concurrence. That's not in the opinion of the court. But the one judge in concurrence presages the court's concern. I forget. In that case, I guess just it's a version of the question Judge Boudin asked you, but is there a Maine case saying that when we're dealing with a, you say with a negligence claim, you say it's a claim for which you can get emotional distress so you don't have to plead it. Yes, Your Honor. But is there a case in which, and there are cases in which there was no reference to emotional distress in the pleading. It's just analogous to this. That's how you say it. Harler is one of them, Your Honor. And so with Lambert, where there was no allegation of emotional distress, but the potential of recovering it was enough, even though not pled. And then other cases where it was pled. What were the facts in that case? In Lambert, Your Honor, it was an interference with expectancy. And there was an underlying probate matter, I believe, and it was a question of whether the defendant had, I think, improperly taken advantage of the decedent before or something like that. And so then York Insurance brings the lawsuit to say, well, this is so far outside what we have to cover, we shouldn't have to defend it. And, again, no emotional distress was alleged, yet the potential of recovering emotional distress was enough that the insurance company was required to defend. But you don't have a case involving a dollar amount this small where you don't plead emotional distress, and yet we're supposed to just imagine that down the line it would occur. Just to put the point as sharp as. . . I take the court's point that there's no suggestion in main law that the dollar amount is relevant to a pleading comparison test. And, of course, Your Honor, this is a class action complaint with 200,000 claimants and tens of millions of dollars potentially at issue here. That's not going to increase the likelihood of any individual having emotional distress that will cause bodily injury. In fact, the opposite. I take the court's point. That's right. But 200,000, if you only have a handful of ex-appointees, each of them would be entitled to their day in court in an individuated damages hearing to prove, tell me about your emotional distress. You know, it strikes me that what makes the case uncomfortable for modern judges is that there was a period in the pleading and litigation when courts seemed to be perfectly comfortable with what we now call fictions. And that that was an accepted part. Nobody was greatly troubled by it. The modern style of rhetoric has tended to move away from that and to be uncomfortable with fictions. And the more or less aligned rules are the kind of honest statement of what's going on. And this case has to be an exception because this is essentially a kind of fiction. Once no concern to lawyers, fictions were part of what they dealt with, that's how a lot of the work of law got done. But it isn't really the modern style. And this, what we're doing here is maintaining a fiction. Nobody thinks the case is actually going to turn into a negligence case, but we sort of have to pretend it is. I don't think that changes what main law is or isn't, but I think it explains why the thing is slightly uncomfortable now. I understand the Court's point, and it seems to me that if the Court turns out a fiction, that was the fiction that the main law court was using in Harvard just very recently. The only other point I would like to make before my time runs out is to the extent Zurich wants to argue the coverage question under the definition of covered harm, it's our position that Zurich waived that argument, and the cases that Zurich cited to try to get around that waiver don't really address this sort of a situation. The cases include access to a state legislative chamber, Fourth Amendment, speedy trial, abortion cases, and this kind of question of duty to defend in an insurance matter does not rise to the same level of public import that this Court ought to be willing to excuse a previous waiver of an argument or, as the District Court discusses on page 207 of the appendix, almost a concession that this covered harm includes mental anguish because of the test that they formulated at the District Court below. Thank you. In no particular order, the plaintiff's scenario, I'm sorry, Electricity Maine in its brief was simply silent on my argument that counts four and five are clones, they're identical. They were silent on that, and I think there's really no way around that. The second point, Zurich's definition of bodily injury which defines it as, quote, bodily harm, sickness, I'm sorry, bodily harm, sickness, or disease, period, this includes mental anguish, mental injury, shock, fright, or death resulting from bodily injury, sickness, or disease. That, I think, is clear. It means not only are we going to cover bodily injury, physical injury as people normally understand it, but if caused by that bodily injury there is emotional or mental harm, then that will be covered. The earlier definitions of bodily injury in the, excuse me, the Douglas Dynamics, Lambert, and Harler cases, which are all pretty much the same, don't even address the concept of emotional distress. It's not in them. So the law court, going back to Douglas Dynamics, went out and said, well, we're going to say that if it's pled in the complaint, emotional distress will automatically give rise to a duty to defend because it could lead to the possibility of bodily harm, and fair enough. But the Zurich definition is anything but ambiguous. It states we will cover emotional distress, but only if it's caused by bodily injury, not the other way around as the law court inferred, if you will, in the cases I've cited. You've asked whether there was a... I don't quite follow that argument. I thought you said not the other way around, but what in the text suggests that if you had actual bodily injury and ulcer from emotional distress you wouldn't get coverage? Nothing. Nothing, absolutely. If it is bodily injury... So on the way the complaint's pled, if it's pled with a possibility of emotional distress leading to bodily injury, then it's covered, right? Well, Zurich's definition is exactly reversed. You keep saying that, but you just said if you have an ulcer from emotional distress, it's covered by the first sentence no matter what. The second sentence is irrelevant because you're not seeking to cover for mental anguish. You're seeking to cover for the ulcer. The ulcer is just caused by the emotional distress. Their complaint is that they pled a type of claim that could result in emotional distress that ultimately might lead to bodily injury, so the first sentence covers that. Well, I respectfully disagree. The complaint does not allege either bodily injury or emotional distress. The other point I would like to make, if I may, in closing, is that there are a few cases in main jurisprudence which have said something is pled as negligence, but it's obviously not negligence, and two that come to mind are not strictly relevant here. One was a murder case where the wrongful death action alleged negligence, and the other was a child sex abuse case in which the court said we're just going to deem this not to be an accident. But the principles that I think are important here, because main law is emerging and changing, is that the cases that the whole jurisprudence was premised on were cases like that. Cases where it could have been intentional, it could have been, but it all happened quickly and it's a little bit ambiguous. Cases where the law court, and two of the three that I cited, Elaka and Ben-Ami are in this exact category, they focus on what does it really mean to be an accident, and if there is a more detailed recitation in the complaint as to the planning that took place, like in Ben-Ami, which was only a few days planning, not seven years, that's one of the major determinants of where something just simply cannot be an accident anymore. The other one, Elaka, similarly, it was an event that went on over a period of about an hour, and it was this repeated incident. You cannot read these in the same way that you would read some of the, most all of the earlier cases on which the duty to defend jurisprudence is based, and I think that this case maybe should be the exception that proves the rule with regard to accident. Thank you. Thank you both. All rise.